IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | ) ) ) |
| LEWIS COUNTY RURAL ELECTRIC COOPERATIVE ASSOCIATION, | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) Civil Action No. _____ |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 2, | ) ) ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**
**(MOTION TO VACATE ARBITRATION AWARD)**

COMES NOW Plaintiff, Lewis County Rural Electric Cooperative Association ("Lewis County" or "the Cooperative"), and moves for an Order, pursuant to 9 U.S.C. § 10, vacating the Award of the Arbitrator outlined herein and attached hereto. In support thereof, Plaintiff alleges the following:

1. The Cooperative is registered under the laws of the State of Missouri, with its principal place of business in Lewistown, Lewis County, Missouri. The Cooperative is and was at all times material herein an "employer" as defined in the National Labor Relations Act, 29 U.S.C. § 152(2).

2. Defendant, International Brotherhood of Electrical Workers, Local Union No. 2 ("the Union"), is an unincorporated labor association which is a labor organization as defined in the National Labor Relations Act, 29 U.S.C. § 152(5), which represents certain of the employees of the Cooperative, transacts business at the Cooperative's

place of business in Lewistown, Lewis County, Missouri, and has a registered address within the jurisdiction of this Court.

3. The jurisdiction of the Court is invoked under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and 28 U.S.C. § 1337.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. The Cooperative and Union have a negotiated collective bargaining agreement, effective November 9, 2017 through October 1, 2021 ("Contract"). Said Contract is between Lewis County as an employer and the Union as a labor organization under 29 U.S.C. § 185.

6. The Contract limits the powers of the Arbitrator at Article XVIII, Section 4, which states:

> **The Arbitrator shall have no power to render a decision which adds to, subtracts from, or modifies this Agreement, and the Arbitrator's decision shall be confined to the meaning of the contract provision which gave rise or which relates to the dispute.** Time limitations in this Article are jurisdictional, but may be extended upon mutual consent of the parties. [**Bold** emphasis added.]

7. The Contract also contains a specific clause, at Article XIX, Section 1, allowing the Cooperative to subcontract bargaining unit work, which states:

> The Cooperative may, in its discretion, contract out at any time any portion of its work; provided, however, that **it shall not do so if such would result in any of the employees of the Cooperative being laid off during the term of this Agreement**. [**Bold** emphasis added.]

8. Tamberly "Tammy" Tate ("Grievant") was hired by the Cooperative on March 16, 1988, and has been an employee of the Cooperative and member of the Union since that that time in different office positions, with her current position being Accounts Receivable/Billing Clerk.

2

9. In the early-2000's, while Grievant was in the position of Administrative Assistant, the General Manager/CEO at that time, Mitch Keel, assigned to Grievant the duty of developing and maintaining a website for the Cooperative, which Grievant began doing at that time.

10. Several years later, in 2009, Grievant bid for and was awarded the Accounts Receivable/Billing Clerk position, which is a very important position to the Cooperative involving billing and receivables. Notwithstanding that change of position, Grievant continued performing the duties related to the Cooperative's website.

11. Effective May 1, 2018, the Cooperative hired a new General Manager, Todd Schroeder.  In conjunction with his hiring, the Cooperative's Board of Directors asked Mr. Schroeder to focus on modernization, efficiency gains, and staffing requirements with new technologies.  Accordingly, Mr. Schroeder began a review of all positions and duties at the Cooperative.

12. Cooperative Board Policy 103 states that the responsibility to be in charge of daily operations of the Cooperative is given by the Board to the General Manager, and the Union did not grieve Board Policy 103.  Similarly, Cooperative Board Policy 408 gives the General Manager the right to direct the workforce, including assignment of duties, and the Union did not grieve Board Policy 408.

13. As a result of Mr. Schroeder's review of all positions and duties, positions have been added and several duties have been switched or "shuffled" between positions, both Union and non-Union, with no one being laid off, and no hours being reduced.  The Union has not grieved any of the changes except the Grievance at issue here.

14. Following Mr. Schroeder's review of the Cooperative's website, he desired more from the website, including making it more interactive, dynamic, etc. Accordingly,

Mr. Schroeder reviewed Grievant's current job description as Accounts Receivable/Billing Clerk and confirmed that web design and maintenance is not listed in Grievant's current job duties. General Manager Schroeder concluded that Grievant should be focusing on billing and accounts receivables, as her job duties are outlined.  On the other hand, the job description for the Manager of Member Services/Government Relations position includes public relations, marketing, advertising, and communications with customers.

15. The "Rural Missouri" newsletter duties were previously shifted from Grievant to the Manager of Member Services/Government Relations position, and Grievant did not file a Grievance when that occurred. The Manager of Member Services/Government Relations also does the Cooperative's Facebook social media administration.

16. Before making the change of assignment of the website duties, General Manager Schroeder met with the Union Shop Steward, Kevin Cottrell, to inquire about whether or not there were "union duties" versus "non-union duties" that could not be transferred.  Steward Cottrell confirmed to Mr. Schroeder that there were **not** such differences in duties.  Rather, there were only Union "jobs" and non-Union "jobs."

17. On June 28, 2018, just prior to the June 2018 Cooperative Board Meeting, Mr. Schroeder met with Grievant to explain to her that the website duties would be moved to the Manager of Member Services/Government Relations. Mr. Schroeder explained to Grievant that it made more sense to have the Manager of Member Services/Government Relations perform those duties.  Grievant responded "Fine, good luck," and did not voice any objection to General Manager Schroeder. Following that meeting, Mr. Schroeder notified the Manager of Member Services/Government Relations, who has been in that position for 15 years, to begin working on taking over the website duties.

4

18. During the transition process, Grievant was out on medical leave from August 15 through October 8, 2018. Grievant acknowledged that the Cooperative's website contained incorrect information at the time of her leave of absence. Upon her return, she noticed that the website design had been changed.

19. Since the time of General Manager Schroeder switching the website duties, Grievant has not been laid off, not worked less hours, and not had a change in her pay rate. To the contrary, Grievant continues to perform her duties of Accounts Receivable/Billing Clerk, with full-time work and the same rate of pay.

20. The Union filed the Grievance dated October 12, 2018.

21. On October 28, 2018, a response letter was issued from the Cooperative's General Manager/CEO to the Union denying the Grievance.

22. An Arbitration Hearing was held in this matter on May 8, 2019.

23. The Union bore the burden of proving by a preponderance of the evidence that the Company violated the Agreement.

24. At the Hearing, and in post-Hearing briefs, the Cooperative argued that the Grievance did not allege a violation of any specific provision of the Contract, and that Grievant admitted she could not identify a specific Contract clause that was violated by the Cooperative reassigning the web duties to the Manager of Member Services/Government Relations position.

25. An Opinion and Award ("Award") was issued by Arbitrator Richard Van Kalker on July 10, 2019. A copy of the Award is attached hereto, as Exhibit A.

26. In the Award, at p. 3, the Arbitrator stated the Issue as follows:

> Did the Company violate the CBA when it reassigned the administration of the Company's website from a bargaining unit employee to a non-bargaining unit employee; if so, what is the appropriate remedy?

5

27. In the Award, the Arbitrator found that it was a violation of the Contract for the Cooperative to reassign the administration of the website from a bargaining unit member to a non-bargaining unit member.  (P. 7 of the Award).

28. In the Award, the Arbitrator found that Article III, Management Rights, which allows the Cooperative the right to "direct the working forces, to determine the qualifications of its employees, to determine the number of employees it will employ or retain, the right to employ, discipline, discharge, promote, classify, demote, transfer, and lay off its employees," does not nullify, modify, diminish, or alter Article IV of the Contract.  (P. 7 of the Award).

29. The Arbitrator found that the Cooperative's reassignment of the administration of the website did not result in a layoff or reduction of hours for the Grievant, but found that such fact did not justify or otherwise excuse the reassignment of bargaining unit work to a non-bargaining unit employee.  (P. 8 of the Award).

30. The Arbitrator did not mention or address the specific Contract clause allowing subcontracting of bargaining unit work, as raised and argued by the Cooperative.

31. The Award of Arbitrator Van Kalker should be vacated and set aside for the following reasons:

    a. The Arbitrator's Award does not draw its essence from the lawful provisions of the Contract, in that the Arbitrator failed to follow the specific clauses bargained by the parties and contained in the Contract and, rather, added and followed an "implied" clause which was not bargained by the parties and does not exist in the Contract.

6

b.  The Arbitrator exceeded his powers by going beyond the limits of his authority contained in the Contract.

c.  The Arbitrator instilled his own personal standards of industrial justice.

WHEREFORE, Plaintiff moves the Court for an Order vacating the Award, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**LAW OFFICES OF RICK E. TEMPLE, LLC**

By _____/s/ Rick E. Temple_____
Rick E. Temple
Missouri Bar No. 33257

1358 E. Kingsley, Suite D
Springfield, MO  65804

Telephone No.:  (417) 877-8988
Facsimile No.:   (417) 877-8989

Attorney for Plaintiff

DATED:  This 3rd day of October, 2019.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **Complaint (Motion to Vacate Arbitration Award)** was served upon the following individual, to-wit:

>Amanda K. Hansen, Esq.
>Schuchat, Cook & Werner
>1221 Locust Street, Ste. 250
>St. Louis, MO 63103-2364
>
>E-Mail:   akh@schuchatcw.com

by e-mail, and by United States mail, duly addressed to said individual, on this 3rd day of October, 2019.

>          /s/ Rick E. Temple          
>            Rick E. Temple